UNITED STATES of America, Appellee,

v.

**Eddie Lee ADAMS, Appellant.**

UNITED STATES of America, Appellee,

v.

**Eddie Lee ADAMS, Jr., Appellant.**

**Nos. 89–5081, 89–5082.**

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 11, 1989.

Decided Dec. 6, 1989.

---

Mark W. Peterson of Minneapolis, Minn., for appellant.

Henry J. Shea, Minneapolis, Minn., for appellee.

Before LAY, Chief Judge, BOWMAN and MAGILL, Circuit Judges.

PER CURIAM.

Eddie Lee Adams appeals his convictions resulting from two separate prosecutions and trials. The first trial involved charges based on a June 8, 1988 incident in the parking lot of a Sears store in Minneapolis. A jury convicted Adams of possession of cocaine with intent to distribute, 21 U.S.C. § 841(a)(1); conspiracy to distribute cocaine, and to possess cocaine with intent to distribute, 21 U.S.C. § 846; use of a firearm during and in relation to a drug trafficking crime, 18 U.S.C. § 924(c); and being a career criminal in possession of a firearm, 18 U.S.C. §§ 922(g), 924(e). The second trial involved charges stemming from a June 26, 1988 incident at the Minneapolis–St. Paul Airport. A jury convicted Adams of possession of more than 500 grams of cocaine with intent to distribute, 21 U.S.C. § 841(a)(1), (b)(1)(B)(ii)(II), and conspiracy to possess cocaine with intent to distribute, 21 U.S.C. § 846. At each trial, evidence of the other criminal incident was admitted. For reversal, Adams argues that (1) the district court[1] erred at both trials in admitting the other crimes evidence, and (2) the government's cross-examination of his alibi witness at the second trial was improper and deprived him of a fair trial.[2] We affirm.

## I.

### A. Sears Parking Lot

On June 8, 1988, Adams was arrested with two others at the scene of an attempted cocaine sale. Special Agent Ted Love of the Drug Enforcement Agency, working undercover, had made arrangements with

---

1. The Honorable David S. Doty, United States District Judge for the District of Minnesota. The first trial took place on October 17–19, 1988; the second on December 15 and 19, 1988.

2. Initially, Adams also contended the district court erred at both trials by failing to instruct the jury that an overt act is an essential element of proof under 21 U.S.C. § 846. At oral argu-

ment, counsel for Adams conceded that this contention must be rejected in light of *United States v. Covos,* 872 F.2d 805, 810 (8th Cir.) (holding definitively that § 846 "does not require proof of an overt act in addition to proof of a conspiracy"), *cert. denied,* —— U.S. ——, 110 S.Ct. 124, 107 L.Ed.2d 85 (1989).

Orrin Jones to buy eight ounces of cocaine. The two drove in Love's car to the parking lot of a Sears store in Minneapolis, where Jones used Love's car phone to call his source, a person he referred to as "E." Jones then told Love that his source would arrive shortly driving a white car. Thereafter, Jones flagged down a white car driven by Adams, who pulled in and parked parallel to Love's car. Adams asked Jones if the deal was going to take place at that location and Jones said, "Yes." He told Jones that if everything did not go all right, "You know what's going to happen." Adams then told his passenger, Robert Johnson, that it was okay to get in Love's car, whereupon Johnson took a gym bag containing the cocaine from Adams' car over to Love's car. Adams told Jones he was going to back up so he could watch what was going on, and then positioned his car behind Love's. After Johnson asked Love for the money and revealed the bag's contents, surveillance agents moved in and made the arrests. As Adams was being removed from his car, a loaded gun was found behind his feet on the car floor.[3]

### B. Minneapolis–St. Paul Airport

Eighteen days later, on June 26, 1988, Adams and Anita Hester arrived at the Minneapolis–St. Paul Airport on a flight from Atlanta, having taken different connecting flights from Fort Lauderdale, Florida. After the two departed the flight separately, they were placed under surveillance by a DEA agent and an airport police officer, who had received information that two passengers on the flight might be engaged in drug trafficking. Adams followed Hester at a distance to the baggage claim area, where he made several phone calls while keeping Hester under observation as she retrieved a checked suitcase. Adams caught up with Hester as she left the building, spoke to her briefly, and then took the suitcase from her. The agent and officer then stopped them for questioning. A consensual search of Adams' carry-on bag revealed nothing of significance and he

was allowed to leave. Shortly thereafter, a consensual search of Hester's suitcase uncovered over 500 grams of cocaine. Both Adams and Hester were traveling under false names. They had flown to Florida together two days earlier, paying cash for one-way tickets and checking no luggage. In addition, Hester had accompanied Adams on a flight from Minneapolis to Atlanta on May 22, 1988.

### II.

Evidence of other crimes is admissible under Fed.R.Evid. 404(b) if it is (1) relevant to a material issue; (2) of crimes similar in kind and reasonably close in time to the crime charged; (3) sufficient to support a jury finding that the defendant committed the other acts; and (4) more probative than prejudicial. *United States v. Anderson*, 879 F.2d 369, 378 (8th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 515, 107 L.Ed.2d 516 (1989). "We consider 404(b) a rule of inclusion, permitting admission of such evidence unless it tends to prove only the defendant's criminal disposition. The trial court is vested with broad discretion in determining whether to admit wrongful act evidence, and its decision will not be overturned unless it is clear that the evidence had no bearing upon any of the issues involved." *United States v. O'Connell*, 841 F.2d 1408, 1422 (8th Cir.) (citation omitted), *cert. denied*, 487 U.S. 1210, 108 S.Ct. 2857, 101 L.Ed.2d 893 (1988), —— U.S. ——, 109 S.Ct. 799, 102 L.Ed.2d 790 (1989). Where intent is an element of the crimes charged, "evidence of other acts tending to established that element is generally admissible." *United States v. Miller*, 725 F.2d 462, 466 (8th Cir.1984).

■ Applying the above well-established principles, we hold that the district court did not abuse its discretion in admitting evidence of the June 26 airport incident at Adams' first trial and evidence of the June 8 parking lot incident at his second trial. The evidence concerning the June 8 inci-

---

**3.** The evidence of the parking lot incident presented at Adams' second trial made no reference to the gun.

dent was clearly relevant to establishing Adams' intent with respect to the June 26 offenses. That evidence was also relevant to showing lack of mistake or accident, as well as identity.[4] Even though it involved subsequent crimes, the evidence regarding the June 26 incident was, in like fashion, relevant to countering Adams' defense that he was merely present at the parking lot on June 8 and had no knowledge of the cocaine and no intent to aid and abet its distribution. Adams' actions with respect to the transport of cocaine into Minneapolis–St. Paul on June 26 were not as ambiguous as he suggests. Rather than merely showing a propensity to associate with persons involved in drug trafficking, Adams' actions were evidence of his involvement in an ongoing drug trafficking scheme of which the attempted sale on June 8 was a part. Adams seeks support from *United States v. Lego*, 855 F.2d 542, 546 (8th Cir.1988), where this court expressed "some reservations" about the use of subsequent crime evidence to show a defendant's state of mind at an earlier time. However, we upheld the admission of such evidence in that case, and we find no reason for a contrary result here, particularly in light of the temporal proximity of the two incidents.

We reject Adams' contention that the other prerequisites to admission under Rule 404(b) were not satisfied at either trial.[5] The two incidents were close in time, occurring within a span of only eighteen days. They also involved sufficiently similar conduct. Adams committed the same drug offenses at the parking lot and airport, and in each case he used a coconspirator to handle the cocaine while he supervised the coconspirator's actions. Furthermore, "[t]he district court has broad discretion in determining whether the probative value of other crimes evidence is outweighed by its prejudicial impact." *United States v. Nabors*, 761 F.2d 465, 471

(8th Cir.), *cert. denied*, 474 U.S. 851, 106 S.Ct. 148, 88 L.Ed.2d 123 (1985). That broad discretion was not abused here. At both trials, the other crimes evidence was quite probative, particularly on the issue of intent, and the possibility of unfair prejudice from the adverse reflection on Adams' character was reduced by the district court's jury instructions regarding the limited purposes for which the evidence was admitted.

■ At his second trial, Adams called as an alibi witness the mother of a woman friend of his. The witness testified that Adams had spent part of the evening of June 24 at her Minneapolis home. Prior testimony had placed Adams in or en route to Florida at that time. On cross-examination, the government questioned the witness about her knowledge of Adams' marital status when he was seeing her daughter, his means of support, his trips to Florida—including trips with Hester, any prior possession of cocaine by Adams, his June 8 arrest, and his subsequent court appearance and supervision. Adams argues that the cross-examination was improper and deprived him of a fair trial because its purpose and effect was to impugn his character, rather than, as the government asserts, to establish bias or lack of credibility by showing the witness had little knowledge of Adams.

Assuming, without deciding, that portions of the cross-examination were improper, any error was harmless beyond a reasonable doubt. In view of the admissibility of the other crimes evidence, the government's case was very strong. Moreover, several of the matters raised during cross-examination were already before the jury, and the district court instructed the jury that lawyers' questions are not evidence. Having carefully reviewed the record, we conclude that the cross-examina-

---

4. Whether Adams was the man with Hester at the airport was at issue because Adams challenged identifications by the DEA agent and airport officer and presented an alibi defense. Testimony regarding the June 8 incident tended to prove that the man was Adams because it

showed Adams' date of birth was the same as the one given by Hester's companion.

5. Adams does not allege the evidence at either trial was insufficient to support a jury finding that he committed the other criminal acts.

**1314**

tion of Adams' alibi witness did not deprive him of a fair trial.

### III.

For the foregoing reasons, we affirm Adams' convictions.