**UNITED STATES of America, Appellee,**

v.

**Bennie JOHNSON, Appellant.**

**No. 90–2748.**

United States Court of Appeals,
Eighth Circuit.

Submitted April 11, 1991.

Decided May 30, 1991.

James C. Delworth, St. Louis, Mo., for appellant.

Kenneth R. Tihen, St. Louis, Mo., for appellee.

Before FAGG and BEAM, Circuit Judges, and DOTY,* District Judge.

DOTY, District Judge.

Bennie Johnson appeals from a final judgment of the district court[1] upon a jury verdict finding him guilty of aiding and abetting in the distribution of heroin in violation of Title 21, United States Code, § 841(a)(1). Johnson raises three issues on appeal:

1. Whether the district court correctly admitted evidence of subsequent drug transactions under Rule 404(b) of the Federal Rules of Evidence;

2. Whether the evidence of subsequent drug transactions constructively amended the indictment; and

3. Whether the district court correctly admitted as background evidence testimony regarding the narcotics operation of Frank Noel.

For the reasons discussed below, we uphold the decision of the district court and affirm appellant's conviction.

Appellant Bennie Johnson ("Johnson") was charged in a one count indictment with distribution of heroin in violation of 21 U.S.C. § 841(a)(1). The charge involved the sale of approximately two grams of heroin by co-defendant Stan Matha ("Matha") to an undercover agent on August 31, 1988. The government alleged that Johnson aided the distribution by setting up the transaction. The government's evidence was presented through the testimony of Larry Palmer ("Palmer"), an informant working for the Drug Enforcement Administration ("DEA"), Tim Jones ("Jones"), an undercover police officer assigned to the DEA Task Force, and Donald Mandrala ("Mandrala"), a special agent with the DEA.

On August 31, 1988, Johnson called Palmer to ask him if he would be interested in purchasing heroin. Palmer told Mandrala about this phone call and Mandrala asked Palmer to arrange a meeting the next time that Johnson called. When Johnson called back, he instructed Palmer to meet him at the corner of Dr. Martin Luther King Drive and Elliott in the City of St. Louis.

---

* The Honorable David S. Doty, United States District Judge for the District of Minnesota, sitting by designation.

1. The Honorable Stephen Nathaniel Limbaugh, United States District Judge for the Eastern District of Missouri.

On that same day, Mandrala, Jones and Palmer met with other DEA agents at a park to arrange the purchase of two grams of black tar heroin. Palmer and Jones then drove to the area of Elliott and Dr. Martin Luther King Drive where Johnson was waiting for them. Both Jones and Palmer testified that they spoke to Johnson about purchasing two grams of black tar heroin. Johnson indicated that he had to contact "Frank" and requested that Palmer and Jones return later that evening. When Jones and Palmer returned, Johnson told them that Frank Noel had already come and gone but that Jones and Palmer could purchase the black tar heroin from "Stan".[2] Johnson then turned and pointed down the street to a man whom Jones recognized as Stan Matha, the co-defendant in this case. Johnson took Jones and Palmer to Matha and introduced them. They negotiated a price of $1,100 for two grams of black tar heroin, and then followed Matha to a gas station. Once there, Palmer was directed to accompany Matha and was handed the money for the heroin by Jones.

Matha and Palmer drove to another area and parked. Palmer gave the $1,100 to Matha and Matha walked to a nearby telephone where he made a phone call. Matha disappeared and then returned to the vehicle, where he gave Palmer the heroin.

Jones testified that while this transaction occurred, he and Johnson were discussing the heroin. Johnson told him how good the heroin was and asked Jones for money in return for setting up the deal. Meanwhile, Matha drove Palmer back to Jones's car. Jones, Palmer and Johnson then drove back to the area of Dr. Martin Luther King Drive and Elliott where they dropped off Johnson. Jones and Palmer returned to the park where they met the surveillance crew and turned the heroin over to Mandrala, who sealed it as evidence.

At trial, the same three witnesses, Palmer, Jones and Mandrala, testified regarding two subsequent heroin deals set up by Johnson involving circumstances which closely tracked the first heroin transaction. On those occasions, Johnson again called Palmer to set up drug transactions for Jones. On the two subsequent dates, Jones and Palmer again met Johnson at Dr. Martin Luther King Drive and Elliott. Johnson accompanied Jones and Palmer to search for a source of heroin and promised that Frank Noel would be the source.

Each of the two subsequent deals was for six grams of black tar heroin. The two purchases were made through another person, Claudell Atkins.[3] On September 16, 1988, Palmer and Johnson met with Atkins where they received what they believed was six grams of black tar heroin. Palmer testified that the six grams were divided into two packages, one of which Johnson gave Palmer to inspect. Palmer and Johnson agreed that it looked and smelled like black tar heroin. Johnson, Palmer, and Atkins returned to the place where Jones was waiting. Jones then drove Johnson to his house and Johnson requested money for setting up the heroin deal.

The third heroin transaction, set up by Johnson on September 20, 1988, was essentially the same. On that occasion, Johnson asked for and received $50 from Jones for setting up the heroin deal. Jones and Palmer then drove Johnson back to the area of Dr. Martin Luther King Drive and Elliott and dropped him off there.

Johnson was charged in a one count indictment with distribution of heroin. The government's proof focused on Johnson's aiding and abetting the distribution of heroin by co-defendant, Stan Matha, and the government sought to introduce evidence of Johnson's participation in the transactions on September 16 and 20. The defendant made a motion in limine to exclude this evidence and the district court reserved ruling on its admissibility. Prior to the government's opening, the government renewed its motion to present evidence of the subsequent acts. The district court then permitted the introduction of this evi-

---

2. Palmer, Jones and Mandrala were involved in an ongoing investigation into the narcotics operation of Frank Noel.

3. The trial judge in the present case also presided over the trial of Claudell Atkins on charges resulting from those two transactions.

dence to prove Johnson's knowledge and intent.

Johnson contends that the trial court abused its discretion by admitting this evidence because it violated Federal Rules of Evidence 403 and 404(b), constructively amended the indictment and premised guilt upon a pattern of later contact. Johnson further contends that the trial court erred in overruling his objection to the admission of testimony regarding the drug operations of Frank Noel.

1. *Admission of Evidence Concerning Subsequent Acts Under Rule 404(b)*

■ Johnson argues that the trial court abused its discretion by admitting evidence regarding the uncharged drug transactions on September 16 and 20, 1988. Under Federal Rule of Evidence 404(b), the trial court may admit evidence of other crimes to demonstrate motive, opportunity, intent, preparation, common plan, knowledge, identity, or absence of mistake or accident. Evidence admitted under Rule 404(b) must meet the following conditions:

1. The evidence of the bad act or other crime is relevant to a material issue raised at trial;

2. The bad act or crime is similar in kind and reasonably close in time to the crime charged;

3. There is sufficient evidence to support a finding by the jury that the defendant committed the other act or crime; and

4. The potential prejudice of the evidence does not substantially outweigh its probative value.

*United States v. Anderson*, 879 F.2d 369, 378 (8th Cir.1989) (citing *United States v. Mothershed*, 859 F.2d 585, 588 (8th Cir. 1988)). The district court has broad discretion to admit such evidence "and its deci-sion will not be overturned unless it is clear that the evidence had no bearing upon any of the issues involved." *United States v. O'Connell*, 841 F.2d 1408, 1422 (8th Cir. 1988) (citations omitted).

■ In the present case, the district court admitted evidence of the two subsequent drug transactions to prove Johnson's knowledge or intent, finding that the evidence met the conditions for admission under Rule 404(b) as stated in *United States v. Lewis*, 759 F.2d 1316, 1349 (8th Cir. 1985).[4] The indictment alleged that Johnson aided and abetted Matha's distribution by setting up a heroin transaction on August 31, 1988. On that date, Johnson obtained the source and supply of heroin for the undercover agent and informant. He remained with the undercover agent during the heroin transaction, discussed the quality of heroin and requested money for setting up the transaction. On September 16 and 20, 1988, all of the witnesses testified that Johnson again met them at the same corner. On both occasions, he led the agents to a source of heroin. Testimony also indicated that at one time Johnson handled the heroin. Jones further testified that on both September 16 and 20, Johnson asked for money for setting up the transactions and he actually received money on September 20.

We conclude that the evidence relating to those subsequent transactions was admissible under Rule 404(b). First, knowledge and intent were material issues concerning the offense charged.[5] In such cases, "evidence of other acts tending to establish [intent] is generally admissible." *United States v. Miller*, 725 F.2d 462, 466 (8th Cir.1984) (citation omitted). The government was required to prove Johnson's intent beyond a reasonable doubt because he

---

**4.** The trial court found that the evidence of the subsequent acts met the clear and convincing standard set forth in *Lewis*. 759 F.2d at 1349. The Supreme Court superseded this requirement in *Huddleston v. United States,* holding that such evidence may be admitted "if there is sufficient evidence to support a finding by the jury that the defendant committed the similar act." 485 U.S. 681, 685, 108 S.Ct. 1496, 1499, 99 L.Ed.2d 771 (1988). The trial court did not abuse its discretion in admitting the evidence under either the *Lewis* or *Huddleston* standard.

**5.** The essential elements of the crime charged were: (1) that the defendant distributed heroin, a controlled substance, on or about August 31, 1988; and (2) the defendant did so knowingly and intentionally.

generally denied the crime. *See United States v. Marin–Cifuentes,* 866 F.2d 988, 996 (8th Cir.1989) (citations omitted); *United States v. Gilmore,* 730 F.2d 550, 554 (8th Cir.1984) (holding that a plea of not guilty requires the government to prove beyond a reasonable doubt each element of the offense charged). Evidence of similar drug activity is admissible in a drug prosecution case because "a defendant's complicity in other similar transactions serves to establish intent or motive to commit the crime charged." *United States v. Felix,* 867 F.2d 1068, 1072 (8th Cir.1989) (citations omitted). In addition, "the mere subsequency of an act to that charged in an indictment does not on that ground alone make it incompetent to establish intent or motive." *McConkey v. United States,* 444 F.2d 788, 790 (8th Cir.1971) (per curiam) (permitting evidence regarding events that occurred two or three months after last act charged in an indictment); *accord United States v. Riley,* 657 F.2d 1377, 1388 (8th Cir.1981).

Johnson also defended by claiming that he was merely present at the transactions and that his actions were innocent. Johnson's opening statement, cross-examinations and closing argument and the testimony of his sister all sought to demonstrate that Johnson acted innocently by merely hanging out at the corner of Dr. Martin Luther King Drive and Elliott. Johnson also claimed that his speaking with and riding along with the undercover detective and the informant were innocent acts. He further stated that he rode along with Palmer and Jones for no other reason than he had "nothing better to do". Evidence of a subsequent drug transaction is relevant to counter a defense that a person was merely present, had no knowledge or did not seek to aid and abet in the distribution. *United States v. Adams,* 898 F.2d 1310, 1313 (8th Cir.1989). Evidence of subsequent deals also can establish involvement in an ongoing drug trafficking scheme. *Id.* at 1313. Testimony concerning Johnson's subsequent acts helped to prove that he had the requisite intent and knowledge by demonstrating that he did not act inadvertently, by mistake or because he was merely present at the scene. Therefore, the evidence was relevant to a material issue raised at trial.

The evidence of the subsequent transactions was also similar in kind and reasonably close in time to the crime charged. The distributions of heroin on September 16 and September 20, 1988, involved similar circumstances to the transaction charged in the indictment. In all three instances, Johnson personally set up the transactions with the same undercover agent and informant, met with them at the same location, and located a source of heroin. *See United States v. Brown,* 923 F.2d 109, 110–11 (8th Cir.1991) (admitting evidence of later drug possession to demonstrate intent because it showed "an offense sufficiently similar in kind" to crime charged). In addition, there was a relatively short time span between the incident on August 31, for which Johnson was indicted, and the subsequent transactions on September 16 and 20, 1988. *See id.* at 1313 (permitting evidence of drug transaction that occurred eighteen days after the incident charged "particularly in light of the temporal proximity of the two incidents"); *McConkey,* 444 F.2d at 790 (admitting evidence of acts that took place two or three months after acts in the indictment).

For admissibility under Rule 404(b), there also must be sufficient evidence to support a jury finding that the defendant committed the other acts. In the present case, the evidence was sufficient to demonstrate Johnson's role in the incidents of September 16 and 20.[6] The same three witnesses who were present for all three occasions testified consistently about Johnson's involvement on those occasions.

Finally, the probative value of the evidence concerning the other acts is not substantially outweighed by its prejudicial ef-

---

**6.** The district court determined that evidence establishing Johnson's participation in the subsequent transactions was clear and convincing.

fect.[7] "The district court has broad discretion in determining whether the probative value of other crimes evidence is outweighed by its prejudicial impact." *United States v. Nabors,* 761 F.2d 465, 471 (8th Cir.1985) (citation omitted). The testimony regarding Johnson's subsequent acts was highly probative of his knowledge and intent and the district court determined that the danger of unfair prejudice did not outweigh this probative value. The district court was in the best position to make this determination, particularly in light of its familiarity with the facts surrounding the subsequent transactions.[8] To minimize the danger of prejudice, the district court also gave a limiting instruction to the jury regarding the evidence of those subsequent transactions.[9] The court's instruction cautioned the jury to consider the subsequent act evidence only to evaluate Johnson's state of mind or intent, not to determine his innocence or guilt of the charged offense. This instruction served to inform the jury of the proper use of the subsequent act evidence, thereby reducing the likelihood that such evidence would be improperly used.

Based on the foregoing, the district court did not abuse its discretion by admitting evidence of the subsequent transactions under Rule 404(b) and thus Johnson's first argument fails.

2. *Constructive Amendment of the Indictment*

■ Johnson also contends that admitting evidence of the subsequent acts constructively amended the indictment. Constructive amendments occur when the terms of the indictment are altered in effect by either the admission of evidence or the use of jury instructions which modify the essential elements of the offense charged so that a substantial likelihood ex-

ists that the defendant was convicted of an offense other than that charged in the indictment. *See, e.g., Stirone v. United States,* 361 U.S. 212, 217–19, 80 S.Ct. 270, 273–74, 4 L.Ed.2d 252 (1960) (reversing a conviction where the indictment only charged obstruction of sand shipments into Pennsylvania, but the trial court allowed evidence and instructed the jury that defendant could be convicted of either obstructing shipments of sand into Pennsylvania or obstructing shipments of steel out of Pennsylvania); *United States v. Attanasio,* 870 F.2d 809, 817 (2d Cir.1989) (indictment is constructively amended when evidence or jury instructions modify essential elements of offense charged); *United States v. Begnaud,* 783 F.2d 144, 147 (8th Cir.1986) (stating that a constructive amendment occurs when instructions permit a jury to convict on a crime other than that charged in the indictment); *United States v. Yeo,* 739 F.2d 385, 386–87 (8th Cir.1984) (reversing conviction where indictment charged extortion involving collection of a debt from one person named in the indictment and the district court erroneously instructed the jury that they could find the defendant guilty of extortion in collecting money from persons other than that named individual).

■ In the present case, the indictment charged that on or about August 31, 1988, Johnson knowingly and intentionally distributed heroin. The government's theory throughout the trial was that Johnson aided and abetted in Matha's distribution of heroin and thus the jury could convict him as a principal. The government presented three witnesses who all stated that Johnson aided and abetted in distribution by setting up a heroin transaction on August 31, 1988. The subsequent acts evidence was admitted to demonstrate Johnson's knowledge and intent, not to change the charged offense,

---

7. The same analysis applies to Johnson's claim that the evidence should be excluded under Federal Rule of Evidence 403 because its probative value is substantially outweighed by the danger of unfair prejudice.

8. The district court previously had presided over the trial of Claudell Atkins, who had supplied the heroin in those transactions.

9. The district court modified E. Devitt & C. Blackmar, *Federal Jury Practice and Instructions* § 14.14 (3d ed. 1977), which concerns evidence of prior acts, to limit the jury's consideration of Johnson's subsequent acts.

thus the evidence did not constructively amend the indictment. The jury instructions also did not modify the essential elements of the offense. The district court instructed the jury using a standard aiding and abetting charge from E. Devitt & C. Blackmar, *Federal Jury Practice and Instructions* § 12.02 (3d ed. 1977). In addition, the jury was given a limiting instruction on the proper use of the evidence concerning the subsequent events. Because the charge in the indictment conformed with the jury instructions given, Johnson was not convicted of charges other than those contained in the indictment. Accordingly, no constructive amendment of the indictment occurred as a result of the evidence or jury instructions.

### 3. *Admission of Evidence Regarding Frank Noel*

 Johnson argues that it was prejudicial error for the district court to overrule his objection and allow testimony regarding the drug operations of Frank Noel, claiming that this evidence was prejudicial and served only to establish Johnson's guilt by association. During the government's presentation of the evidence, Mandrala testified regarding an ongoing investigation of black tar heroin sales. Part of this investigation involved infiltrating an organization comprised of approximately 150 individuals at various distribution levels. Noel was a principal target in that investigation. Mandrala explained how the DEA and St. Louis City police officers began the investigation and also recounted various attempts to be introduced to Noel for the purposes of buying heroin.

Jones also testified about the investigation and its focus on Frank Noel. Jones's testimony centered on the fact that Johnson was to act as "a go-between to get to" Noel. On August 31, 1988, Johnson told Jones and Palmer that he could obtain heroin from "Frank" and then made a phone call to arrange the deal. Johnson later informed Jones and Palmer that Frank Noel had arrived with the heroin and then left the area, after telling Johnson to direct Jones and Palmer to deal through "Stan".

The government introduced the testimony concerning Noel to explain to the jury why the officers and agents began that investigation and to explain their activity regarding Johnson's role in that investigation. Defense counsel also referred to Noel in its cross-examination of each of the government's witnesses. The district court admitted the testimony to explain the government's investigation and to provide background material regarding Noel.

Out of court statements offered for the limited purpose of explaining why government investigations are undertaken are not considered as hearsay. *United States v. Love*, 767 F.2d 1052, 1063–64 (4th Cir.1985) (permitting drug enforcement agent's testimony about background of drug investigation to explain circumstances surrounding defendant's arrest). In order to aid the jury, a district court has discretion to admit such evidence to explain why officers and agents began their investigation and to explain their subsequent activity. *See, e.g., United States v. Hawkins*, 905 F.2d 1489, 1495 (11th Cir.1990); *United States v. Martin*, 897 F.2d 1368, 1371 (6th Cir.1990). The record shows that the district court allowed the testimony of Jones and Mandrala about Noel to help the jury by explaining the background of the investigation in the present case. The trial court thus did not abuse its discretion by admitting the evidence for that limited purpose.

The admissibility of testimony proffered to explain the background of an investigation is also evaluated under Federal Rule of Evidence 401 to determine its relevance and under Federal Rule of Evidence 403 to determine whether the testimony's probative value is substantially outweighed by the danger of unfair prejudice. Pursuant to Rules 401 and 403, the district court ruled that the testimony concerning Noel was admissible because it was relevant to aid the jury in explaining the investigation and its probative value outweighed its prejudicial effects. Johnson contends that the evidence was unduly prejudicial. Although relevant evidence is inherently prejudicial, *see United States v. Zimmerman*, 832 F.2d 454, 458 (8th Cir.1987), the balance under Rule 403 generally should be struck

in favor of admission. *United States v. Dennis*, 625 F.2d 782, 797 (8th Cir.1980). An objection pursuant to Rule 403 is reviewed on an abuse of discretion standard. *Zimmerman*, 832 F.2d at 458; *Smalley v. United States*, 798 F.2d 1182, 1188 (8th Cir.1986). The trial court admitted the testimony about Noel for the limited purpose of explaining why the government's investigation was undertaken and not to prove Johnson's guilt by association. *See United States v. Freeman*, 816 F.2d 558, 563 (10th Cir.1987). The testimony of Jones and Mandrala regarding the background investigation into heroin trafficking was brief. The two witnesses only testified about Noel to explain to the jury why Johnson was involved in that investigation. The questioning by the government and Johnson's attorney focused on Johnson's initial statements that he could get black tar heroin from Frank Noel. Jones's and Mandrala's testimony explained the agents' conduct and demonstrated the significance of Johnson's acts of aiding and abetting in the distribution of black tar heroin by acting as a go-between. The evidence was not proffered to prove Johnson's guilt by association and the district court did not abuse its discretion by ruling that such testimony was admissible as background material.

### 4. Conclusion

The district court did not abuse its discretion by admitting evidence of Johnson's subsequent acts or background evidence regarding the investigation of Frank Noel. Admission of the subsequent events evidence also did not constructively amend the indictment. Accordingly, the decisions of the district court and Johnson's conviction are affirmed.