# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 00-3495

_____

United States of America,          *
                                   *
          Plaintiff - Appellee,    *
                                   *   Appeals from the United States
v.                                 *   District Court for the
                                   *   Eastern District of Missouri.
Tony Michael Green,                *
                                   *
          Defendant - Appellant.   *


_____

No. 00-3627

_____

United States of America,          *
                                   *
          Plaintiff - Appellee,    *
                                   *
v.                                 *
                                   *
Climmie Robinson,                  *
                                   *
          Defendant - Appellant.   *


_____

Submitted: September 11, 2001
Filed:  December 27, 2001

_____

Before MORRIS SHEPPARD ARNOLD and BRIGHT, Circuit Judges, and KYLE,[1] District Judge.

_____

BRIGHT, Circuit Judge.

Tony Green and Climmie Robinson each appeal their convictions for drug offenses, raising issues as to the admissibility of evidence obtained during the search of a car at a drug checkpoint. In addition, Ms. Robinson challenges the admission of her prior possession of narcotics under Federal Rule of Evidence 404(b). We reject their contentions and affirm.

I.    BACKGROUND

On February 16, 2001, the Franklin County, Missouri, Sheriff's Department operated a drug interdiction checkpoint on eastbound Interstate 44 (I-44), approximately one mile east of St. Clair, Missouri. The Franklin County Sheriff's Department had adopted the Drug Enforcement Checkpoint Plan of Action, to govern the operation of the checkpoint. The Sheriff's Department posted signs on I-44 warning of the checkpoint for eastbound traffic one mile before the checkpoint. However, for such eastbound traffic another exit ramp, the AH exit, is located after the signs but before the checkpoint. The plan indicated:

> The AH overpass was selected because of its remote location. Eastbound travelers having passed the rest area and two St. Clair exits which offer gas, food, and lodging have little reason to exit at AH which has no "services" and no aerial signs to reflect "services" at the exit. In an attempt to enhance the likelihood of contacting drug couriers at the checkpoint, two signs will be placed approximately 1/4 mile west of the

_____

[1]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota, sitting by designation.

AH overpass on both sides of the eastbound lanes of Interstate 44. The signs state:

"DRUG ENFORCEMENT CHECKPOINT 1 MILE AHEAD"

The signs are placed prior to the exit ramp in an attempt to divert suspected drug traffickers to the actual checkpoint located at the top of the overpass.

Green's Add. at 38.

About 11:00 p.m. at the top of the AH exit ramp, police stopped a white Buick Century driven by Edward Freeman and occupied by Tony Green and his wife, Elizabeth Green. Franklin County Deputy Sheriff Raymond Pracht advised Freeman of the drug enforcement checkpoint. Pracht asked Freeman several questions, including whether he noticed the signs leading up to the checkpoint. Pracht further detained Freeman after (1) witnessing Freeman shaking; (2) Freeman telling him he stopped because he was tired and had bloodshot eyes; (3) seeing Freeman did not have bloodshot eyes; and (4) Freeman telling Pracht about his need to go to the bathroom despite the fact that the exit had no such services.

Freeman voluntarily admitted that he received $500 to deliver a package to St. Louis and that he believed the package contained drugs. Freeman orally consented to a search of the car and signed a consent form authorizing the search. A drug dog indicated the presence of drugs in the car. The search produced three packages of cocaine, totaling 2236 grams. The police found two packages of drugs, wrapped in duct tape and concealed in open potato chip bags under the front passenger seat. Police found the third bag of drugs in the air duct of the car. Freeman agreed to cooperate in the investigation.

Freeman implicated Green as a co-drug courier and said that they were to deliver drugs to Climmie Robinson. Tony and Elizabeth Green denied any

-3-

knowledge of the drugs. Green said that he and his wife had traveled with Freeman to Los Angeles, where they stayed a short time. Green said they were returning home at the time of the police stop.

Officers at the checkpoint informed St. Louis Drug Enforcement Agency (DEA) Agent Anthony Boone about Freeman's willingness to cooperate. Agent Boone then arranged a controlled delivery of the drugs by Freeman to Climmie Robinson. Prior to the controlled delivery, DEA Agent Robert Bayes obtained a search warrant for Robinson's residence. Freeman delivered a "sham" package of drugs to the house. After Freeman delivered the package, the police executed the search warrant to recover the sham package. Robinson and a number of others were arrested as a result of the controlled delivery.

Green and Robinson moved to suppress the evidence obtained at, and derived from, the initial stop of the Buick. The district court[2] denied the motion to suppress the evidence of the cocaine. A jury convicted Green and Robinson of possession and intent to distribute cocaine. The district court sentenced Green to seventy-eight months (six years and six months) and Robinson to 130 months (ten years and ten months). Green and Robinson timely appeal.

## II.    FOURTH AMENDMENT CLAIM

Both Green and Robinson bring Fourth Amendment challenges to the admission of evidence resulting from the stop and subsequent search of the car at the drug checkpoint. We will review their claims individually.

---

[2]The Honorable Donald J. Stohr, United States District Judge for the Eastern District of Missouri adopting the report and recommendation of the Honorable Thomas C. Mummert III, United States Magistrate Judge for the Eastern District of Missouri.

We review the district court's factual determinations for clear error and the denial of a motion to suppress de novo. United States v. Gomez, 16 F.3d 254, 256 (8th Cir. 1994).

At oral argument, Green's attorney argued that Green challenged the stop of the vehicle and the detention of his person, but did not challenge the seizure of the car. The government contends that Green lacks standing[3] to make any Fourth Amendment challenge. In determining whether Green has standing to challenge the stop of the car and the resulting seizure of drugs, it is important to distinguish between the stop of the car and the search resulting in the discovery of the drugs. For the reasons that follow, Green lacks standing to contest the search of the car, but he does have standing to challenge the stop and the detention of his person. United States v. Lyton, 161 F.3d 1168, 1170 (8th Cir. 1998).

Green can only assert a violation of his Fourth Amendment rights if he can demonstrate a legitimate expectation of privacy as a passenger of the car driven by Freeman. Rakas v. Illinois, 439 U.S. 128, 138-44 (1978). Fourth Amendment rights are personal and may not be asserted vicariously. United States v. McCaster, 193 F.3d 930, 933 (8th Cir. 1999). We first address whether Green had a legitimate expectation of privacy in the area searched or the items seized. As stated in Rakas, "[a] person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises

---

[3]We use the term "standing" as a shorthand reference to the issue of whether defendants' Fourth Amendment interests were implicated by the challenged government actions. "Technically, the concept of 'standing' has not had a place in Fourth Amendment jurisprudence . . . since the Supreme Court in Rakas v. Illinois, 439 U.S. 128 (1978), indicated that matters of standing in the context of searches and seizures actually involved substantive Fourth Amendment law." United States v. Sanchez, 943 F.2d 110, 113 n.1 (1st Cir. 1991).

or property has not had any of his Fourth Amendment rights infringed." Rakas, 439 U.S. at 134.

To establish a legitimate expectation of privacy, the defendants must demonstrate: (1) a subjective expectation of privacy; and (2) that this expectation is one that society is prepared to recognize as objectively reasonable. United States v. Muhammad, 58 F.3d 353, 355 (8th Cir. 1995). The ownership, possession and/or control of the area searched or item seized is relevant to the analysis. Gomez, 16 F.3d at 256. The United States Supreme Court has explicitly determined that a person has no reasonable expectation of privacy in an automobile belonging to another. Rakas, 439 U.S. at 148-49.

Green cannot show any possessory or privacy interest in the car. In fact, he has denied such an interest. Green did not object to the magistrate judge's determination that he lacked standing to contest the search of the car. As a passenger, Green does not have a right to challenge the search of the car. Id. Moreover, Freeman, who did have an interest in the car, consented to the search.

Even though Green lacked a possessory or property interest in the motor vehicle that would enable him to directly challenge the search, he may still contest the lawfulness of his own detention and seek to suppress evidence as the fruit of his illegal detention. See United States v. Kreisel, 210 F.3d 868, 869 (8th Cir. 2000); see also United States v. DeLuca, 269 F.3d 1128, 1133 (10th Cir. 2001) (determining that a passenger can challenge the unlawful detention resulting from a stop of the driver and the vehicle). A passenger has standing to challenge his detention because all occupants of a stopped vehicle are subject to a Fourth Amendment seizure. Michigan Dep't of State Police v. Sitz, 496 U.S. 444, 450 (1990). Such a stop affects an occupant's interest in freedom from random, unauthorized, investigatory seizures. Delaware v. Prouse, 440 U.S. 648, 653 (1979). "The interest in freedom of movement and the interest in being free from fear and surprise are personal to all occupants of

a vehicle, and an individual's interest is not diminished simply because he is a passenger as opposed to the driver when the stop occurred." United States v. Kimball, 25 F.3d 1, 5 (1st Cir. 1994).

We consider whether Green's initial detention violated the Fourth Amendment and whether any "fruits" of that detention must be suppressed. United States v. Portwood, 857 F.2d 1221, 1222 (8th Cir. 1988) (citing United States v. Durant, 730 F.2d 1180, 1182 (8th Cir. 1984) ("[a]ny evidence attained as a direct result of an illegal stop would be inadmissible under the 'fruit of the poisonous tree doctrine.'")). For the reasons that follow, we determine that the discovery of drugs in the car is not a "fruit" of Green's illegal detention.

In the instant case, the police stopped the car at a drug checkpoint. In Indianapolis v. Edmond, 531 U.S. 32 (2000), the United States Supreme Court determined that checkpoints set up for general crime prevention, including drug interdiction, do not pass constitutional muster under the Fourth Amendment. Id. at 42. Edmond addressed a class action lawsuit challenging the constitutionality of the checkpoints. Id. at 36.

The Supreme Court noted that "our checkpoint cases have recognized only limited exceptions to the general rule that a seizure must be accompanied by some measure of individualized suspicion." Id. at 41. The Court determined that because the Indianapolis checkpoint's primary purpose was directed at ordinary criminal wrongdoing, it violated the Fourth Amendment. Id. at 42. The Court indicated that, unlike drinking and driving, drug possession does not amount to a threat to life and limb. Id. at 43. The Court noted that "[w]e cannot sanction stops justified only by the generalized and ever-present possibility that interrogation and inspection may reveal that any given motorist has committed some crime." Id. at 44.

-7-

We assume, without deciding, that the drug checkpoint at issue here had the intended purpose of general crime control, namely the discovery of illegal narcotics. Thus, with that assumption, the police violated Green's Fourth Amendment right against unreasonable seizure when they stopped Freeman's vehicle and detained Green.

Although Green's detention may have violated his Fourth Amendment rights, that violation was independent and separate from the discovery of the drugs, which rested on Freeman's freely given consent to search the car. Green's illegal detention did not taint the search and seizure of the drugs. Importantly, the magistrate judge made the finding that Freeman's consent to search was voluntary. The district court adopted this finding. The district court stated:

> Green argues that Freeman's consent to search the vehicle and Green's lack of standing concerning that search do not neutralize what Green asserts was an unreasonable seizure of the car and of Green himself in the form of the drug interdiction stop. The Court disagrees. Green does not object to the magistrate judge's findings that Freeman voluntarily consented to a search of the car, and that Green has no standing to contest the search of the car itself. Green's invocation of the general "tainted fruit" principles of Wong Sun v. United States, 371 U.S. 471 (1963), does not carry the day in the face of the Eighth Circuit's recent decision in United States v. Kreisel, 210 F.3d 868, 2000 WL 354923 (8th Cir. April 7, 2000). In Kreisel, the Eighth Circuit held that a driver's valid consent to search his truck "provided a basis for [the search] that was independent of whether the officers' stop of the truck comported with the fourth amendment." Id. at [869] *1. The notion of consent which is "sufficiently an act of free will to purge the original taint," id., is acknowledged in Wong Sun as well. Wong Sun, 371 U.S. at 486. Neither has Green objected to the magistrate judge's findings concerning the consensual nature of his own statements.

United States v. Robinson, No 4:00CR129-DJS (E.D. Mo. May 31, 2000) (order).

-8-

The district court properly relied on <u>Kreisel</u> in making its determination. <u>Kreisel</u>, 210 F.3d at 869. We determine that the seizure of the drugs did not violate Green's Fourth Amendment rights. <u>See</u> <u>DeLuca</u>, 269 F.3d at 1133 (finding that defendant's unlawful detention did not result in suppression of drugs).

Robinson lacks standing to challenge both the stop of the car and the seizure of the drugs. Robinson presents no basis to contest the stop of the car and its subsequent search and the seizure of the drugs. She did not occupy the car at the time of the stop and has denied any interest in it. She did not personally rent the car, nor did she ever possess it. At most, she argues that she may have assisted in finding someone to rent the car. Such a showing is not sufficient to establish a Fourth Amendment interest in the car. The district court did not err in denying Robinson's suppression motion.

III.    RULE 404(b) EVIDENCE

At trial, the government presented the testimony of East St. Louis Police Officer Curtis Hill to establish Robinson's prior possession of various illegal drugs under Federal Rule of Evidence 404(b). Robinson challenges the admission of this evidence.

Officer Hill testified that on the night of May 23, 1996, he and other officers entered Riff's Lounge in East St. Louis. They approached a table where Robinson was sitting. The officers saw crack cocaine and marijuana on the floor under the table. The officers questioned Robinson but she could not respond because something blocked her mouth. Upon an officer's request, Robinson took crack cocaine out of her mouth and placed it on the table. The officers then arrested Robinson for the unlawful possession of cocaine.

On March 14, 2000, approximately four moths prior to trial, the government provided Robinson's attorney with a printout of Robinson's prior criminal record, which included the May 1996 arrest. The printout showed no disposition of the arrest.

On June 27, 2000, a week before trial, prior to a pretrial conference, Robinson's attorney orally inquired about Rule 404(b) evidence. The government responded that it was still trying to find out about the May 1996 arrest. Later that day, the government received further information on the incident from the East St. Louis police department. The government promptly faxed the information to Robinson's attorney along with a letter stating its intent to use the information at trial.

Federal Rule of Evidence 404(b) states that the government must provide notice of its intent to use "evidence of other crimes" reasonably in advance of trial and "upon request by the accused." The policy behind 404(b) is "to reduce surprise and promote early resolution on the issue of admissibility." Fed. R. Evid. 404(b) cmt. The rule imposes no specific time limits beyond requiring reasonable pretrial notice and the Committee notes explain that "what constitutes a reasonable . . . disclosure will depend largely on the circumstances of each case." Fed. R. Evid. 404(b) cmt. In the circumstances here, the government gave reasonable pretrial notice of its intent to use Robinson's prior possession of drugs as evidence of her knowledge of drugs.

We review the admission of this evidence under an abuse of discretion standard. See United States v. Perez-Tosta, 36 F.3d 1552, 1560 (8th Cir. 1994). We will not overturn the admission of Rule 404(b) evidence unless the evidence did not bear upon any of the issues in the case. United States v. Adams, 898 F.2d 1310, 1312 (8th Cir. 1989). Further, where intent is an element of the crimes charged, "'evidence of other acts tending to establish that element is generally admissible.'" Id. (quoting United States v. Miller, 725 F.2d 462, 466 (8th Cir. 1984)).

-10-

Factors to consider in determining the reasonableness of the government's pretrial notice of intent to introduce evidence of prior bad acts include: (1) the time when the government could have learned of the availability of the evidence through timely preparation for trial; (2) the extent of prejudice to defendant from lack of time to prepare; and (3) how significant the evidence is to the government's case. Perez-Tosta, 36 F.3d at 1562. "Reasonable notice" under 404(b) should also take into account the circumstances of the prosecution's own discovery of the evidence. Id. at 1561.

As we have already noted, the government gave Robinson's attorney reasonable notice of the Rule 404(b) evidence. The government provided a printout of the arrest record four months before trial and supplemented the information as it became available. The district court did not abuse its discretion by admitting the evidence.

IV. CONCLUSION

We affirm the convictions of Green and Robinson.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.