# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-2214

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| Loren W. May, Sr., | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: January 11, 2007
Filed: February 13, 2007

_____

Before COLLOTON, BRIGHT and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

A jury found Loren W. May, Sr. ("May") guilty of conspiracy to distribute 50 grams or more of cocaine base ("crack cocaine") in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846. May appeals, arguing that the evidence was insufficient to support the conviction. For the reasons discussed below, we affirm the entry of judgment on the verdict by the district court.[1]

_____

[1]The Honorable Dean Whipple, Chief Judge of the United States District Court for the Western District of Missouri.

## I.  BACKGROUND

Law enforcement officers executed a search warrant on a St. Joseph, Missouri residence owned by May's father, Oscar May ("Oscar"), in March 2004.  May, his sons Jorael and Derrick May, Karlo Ginn and five other people were found inside. The officers recovered approximately 119 grams of crack cocaine from various locations throughout the residence, as well as drug paraphernalia, an electronic scale and a loaded firearm.  May was discovered in a corner of the basement with his pants pockets pulled out.  May was charged, along with nine other individuals, with conspiracy to distribute crack cocaine.

At May's trial, Ginn served as a cooperating witness for the Government, testifying that he and Jorael routinely purchased cocaine in Kansas City, converted it to crack cocaine and sold it in St. Joseph from Oscar's residence.  Ginn testified that he personally observed May selling crack cocaine hundreds of times at the residence over a period of several years.  According to Ginn, May usually obtained the crack cocaine for resale from his sons, although occasionally he obtained it from Ginn or another source.  Ginn could not give a reliable estimate of the total amount of crack cocaine he had seen May sell.

Lawanda Roath, who described herself as Oscar's girlfriend, testified that she had purchased crack cocaine from May at the residence on numerous occasions. Roath agreed to work as a paid informant for the St. Joseph police.  On November 16 and November 23, 2004, while wearing a concealed audio recording device, she purchased small quantities (roughly one-quarter and one-tenth of a gram) of crack cocaine from May at the residence.  The recording of the second purchase was played for the jury, with Roath identifying her own voice and May's.  On the recording, May stated that Jorael recently had obtained 19 ounces (approximately 530 grams) of crack cocaine and that May could procure the drug from Jorael to sell to her.  However, May did not succeed in contacting Jorael and instead used an unidentified source to provide the crack cocaine for Roath on that occasion.

At the conclusion of the Government's evidence, May moved for judgment of acquittal. The district court denied the motion, and May presented no evidence. The jury returned a guilty verdict. At sentencing, the district court found May responsible for at least 500 grams but less than 1.5 kilograms of cocaine base, yielding a base offense level of 36. *See* United States Sentencing Guidelines § 2D1.1(c)(2). The district court also applied a § 3B1.2 two-level minor role reduction and declined to apply a § 2D1.1(b)(1) two-level enhancement for the firearm in the residence, resulting in a total offense level of 34. With a criminal history category of IV, the advisory guidelines range was 210 to 262 months. After considering arguments based on the other sentencing factors in 18 U.S.C. § 3553(a), the district court imposed a sentence at the high end of the advisory range.[2]

## II.   DISCUSSION

On appeal, May renews his argument that the evidence was insufficient to support his conviction. May's motion for judgment of acquittal at the close of the Government's evidence serves to preserve this argument for appeal. *United States v. Vinton*, 429 F.3d 811, 815 (8th Cir. 2005). "We review the sufficiency of the evidence de novo, viewing evidence in the light most favorable to the government, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict." *United States v. Washington*, 318 F.3d 845, 852 (8th Cir. 2003). "We may reverse only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt." *Id.*

To obtain a conviction for conspiracy, the Government must prove (1) the existence of an agreement to achieve an illegal purpose, (2) the defendant's knowledge of the agreement, and (3) the defendant's knowing participation in the

---

[2]May does not appeal the reasonableness of his sentence or the associated advisory guidelines calculation.

agreement. *United States v. Johnson*, 439 F.3d 947, 954 (8th Cir. 2006). The agreement may be a tacit understanding rather than a formal, explicit agreement. *Id.* In the instant case, there was sufficient evidence to show that May was a member of a conspiracy to distribute 50 or more grams of crack cocaine. Ginn testified that May procured crack cocaine from his sons and other sources and resold it at the residence literally hundreds of times. In addition, Roath testified that she made multiple purchases from May at the residence, including two controlled purchases. Roath also testified to the authenticity of a recording of the second controlled purchase in which May asserted he could obtain crack cocaine from his son Jorael for resale because Jorael recently had obtained 19 ounces (more than 500 grams). This evidence is more than sufficient to allow a reasonable jury to conclude beyond a reasonable doubt that at least a tacit agreement to distribute crack cocaine existed and that May knowingly participated in that agreement with Jorael, Ginn and the others. *See United States v. Detweiler*, 454 F.3d 775, 777 (8th Cir. 2006) (finding sufficient evidence to support a conviction for conspiracy to distribute narcotics where the defendant "repeatedly purchased methamphetamine from [a regular source], then sold methamphetamine to regular customers").

May argues that the evidence shows only that May sold small amounts of crack cocaine to support his own crack cocaine habit and did not profit otherwise from the conspiracy. May contends that the evidence therefore demonstrates only a buyer-seller relationship. This argument is foreclosed by the evidence of his numerous purchases of crack cocaine for resale. *See Vinton*, 429 F.3d at 815 ("Evidence of a 'single transient sales agreement' and small amounts of drugs consistent with personal use may indicate that a defendant is only involved in a buyer-seller relationship, rather than a member of the conspiracy."); *United States v. Romero*, 150 F.3d 821, 826 (8th Cir. 1998) ("The evidence is sufficient to support a conspiracy where the drugs were purchased for resale."). In addition, May argues that the source of the crack cocaine he sold to Roath in the two controlled buys was never identified as a member of the conspiracy. However, "[t]he fact that the identity of some or all other members of the

conspiracy remains unknown will not preclude a conspiracy conviction." *United States v. Agofsky*, 20 F.3d 866, 870 (8th Cir. 1994). Finally, May claims there is no evidence connecting him to the 119 grams of crack cocaine recovered from the search of Oscar's residence because no evidence shows that May himself resided there. We note first that Roath did testify that May lived at the residence, and she was not challenged on this point during cross-examination. In any event, May's non-residency at Oscar's house would do nothing to detract from the other evidence tending to show May's participation in the conspiracy. Therefore, the evidence was sufficient to sustain May's conviction.

## III.   CONCLUSION

We conclude that the evidence was sufficient to support the jury's verdict finding May guilty of conspiracy to distribute 50 or more grams of crack cocaine. Accordingly, we affirm the entry of judgment on the verdict by the district court.

BRIGHT, Circuit Judge, concurring separately.

As the majority states, slip. op. at 3 n.2, no appeal was taken regarding the reasonableness of May's sentence of 262 months' (21 years, 10 months') imprisonment. Such an issue, if it were raised, likely would be unavailing. *See United States v. Jones*, 145 F.3d 959, 966 (8th Cir. 1998) (Bright, J., concurring in part and dissenting in part).

However, as the dissenter against Jones's sentence, I must observe that May, who like Jones was a minor offender who went to trial, received the heaviest sentence of his co-defendants, all of whom pleaded guilty. Here, the two principal members of the conspiracy received sentences of 220 months' (18 years, 4 months') imprisonment, and lesser members received sentences of 210 (17 years, 6 months), 70, 57, 50, 48, and 24 months.

In this case, as in other cases where the guidelines serve to measure a sentence, sometimes the less culpable receive heavier sentences. When a conspiracy exists, the entire weight of drugs can be attributable to all members. If a minor offender exercises his Constitutional right to a trial, the penalty of losing is a heavier sentence than others, who may be more culpable but plead guilty and provide useful information to the Government by informing on others. I continue to observe that,

> [r]egrettably, the primary consideration under our present sentencing scheme is not criminality, but rather on the weight of the drugs charged to a defendant plus the information a defendant will give to his or her prosecutor. . . . For their part, the underlings are rarely privy to workings of the overall conspiracy and consequently have nothing to sell to the prosecutor.

*Id.* Cases such as this dispel the myth that the sentencing guidelines will "avoid unwarranted sentence disparities," *see* 18 U.S.C. § 3553(a)(6), in drug cases. Disparity is built into the system.

_____