# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 06-1929

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| Bonnie S. Timlick, | * | District of Nebraska. |
| | * | |
| Appellant. | * | |
| | * | |
| | * | |

_____

Submitted: March 12, 2006
Filed: April 10, 2007

_____

Before COLLOTON, BEAM and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

A jury found Bonnie S. Timlick guilty of one count of possession with intent to distribute 50 grams or more of methamphetamine and one count of possession with intent to distribute cocaine, both in violation of 21 U.S.C. § 841(a)(1). On appeal, Timlick challenges the sufficiency of the evidence supporting her convictions. We affirm.

## I.    BACKGROUND

Nebraska State Trooper Robbie Jackson stopped an eastbound Toyota 4-Runner, a sports utility vehicle (SUV), driven by Manual Martinez and in which Bonnie Timlick was a passenger, on Interstate 80 in western Nebraska for a speeding violation.  The stop, which lasted approximately three hours, was recorded on videotape. When Trooper Jackson approached the SUV, he observed that the rear seat was folded down creating a flat cargo area in the rear of the SUV, where Timlick was lying down.  Martinez was in the driver's seat.  Following protocol, Trooper Jackson separated the two occupants by removing Martinez from the SUV and placing him inside the trooper's cruiser.  In response to questioning by Trooper Jackson, Martinez revealed that he used to live in Arizona, currently lives in Iowa but was coming from Wyoming.  He later stated that he was coming from Arizona on his way home to Iowa. Martinez stated that he was in Arizona for one week visiting his parents, with whom he and his girlfriend of four years, Timlick, had stayed while they were in Arizona.

Trooper Jackson then proceeded back to Martinez's SUV to question Timlick. Timlick was in the rear cargo area of the SUV when the questioning began, but she moved to the front seat upon Trooper Jackson's request.  When asked where they were coming from, Timlick first responded "Idaho" but then changed her answer to "Arizona."  Timlick explained that Martinez had driven to Arizona to bring her back to Iowa, where she used to live, so they could pick up a vehicle for Martinez since his broke down in Wyoming.  She said that Martinez was a friend of the family and was her boyfriend only "sometimes."  Timlick was not sure how long Martinez had been in Arizona but guessed it had been for about three days.  When Trooper Jackson asked whether the two had stayed together in Arizona, Timlick responded "no," but she then stated that "well, sometimes he stays with me and sometimes he stays with friends." According to Trooper Jackson, Timlick appeared flustered and confused during this conversation.

Trooper Jackson then went back to his cruiser to talk further with Martinez. At this point, Martinez said his reason for traveling to Arizona was to get Timlick and bring her back to Iowa to live with him. Martinez also stated that Timlick had never lived in Iowa before. According to Trooper Jackson, Martinez appeared nervous and was sweating, which he remembered specifically since it was a "chilly" February day.

Trooper Jackson requested Martinez's permission to search the SUV, but Martinez refused. He then requested that dispatch send the nearest canine unit for a drug dog sniff of the SUV. When Trooper Jackson informed Timlick that he suspected criminal activity and that he had called for a canine unit, she responded, "what do you mean?" Trooper Jackson then asked her if they had drugs, such as marijuana, in the SUV, but Timlick did not answer the question.

Trooper Russ Lewis, the canine handler, eventually arrived with his drug dog. Timlick was removed from the SUV and placed in Trooper Jackson's cruiser with Martinez, where their conversation was recorded by the cruiser's videotape system. While Trooper Jackson was outside the cruiser and assisting with the dog sniff, the cruiser's videotape system recorded Timlick telling Martinez that Trooper Jackson "thinks it's marijuana" but stated that she did not "think he found it." Meanwhile, the drug dog indicated to the odor of drugs at two different spots on the SUV. In order to perform a search, the troopers needed the keys to the SUV. When Trooper Jackson asked both Martinez and Timlick for the keys, he was told that they were in Timlick's purse, from which Trooper Jackson then retrieved them. Upon searching the interior of the SUV, the troopers found 312 grams of cocaine, individually wrapped in 11 bags containing about one ounce each, and 448 grams of 99% pure methamphetamine, all in an unlocked and unsecured compartment in the SUV's left rear cargo area.

Martinez and Timlick were placed under arrest. While Martinez and Timlick were again left alone in the cruiser, the videotape system recorded Timlick telling Martinez that she did not "know where it was." Martinez responded that he had told

her "it was the left side, the left side twice, three or four times," but assured Timlick that he would tell the trooper that she did not know what Martinez had planned for the trip and that she "did not know anything about it." Timlick responded, "OK." However, Martinez never told the troopers that Timlick was an innocent passenger.

A federal grand jury returned an indictment against Timlick on one count of possession with intent to distribute 50 grams or more of methamphetamine and one count of possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1). At trial, the Government introduced into evidence the videotape of the recorded traffic stop and a corresponding transcript. They also presented expert testimony that the route traveled by Martinez and Timlick, from a border-town in Arizona to Iowa, was consistent with drug trafficking and that the quantities, purity and packaging of the drugs were consistent with distribution rather than personal use. At the close of the Government's case, Timlick made an oral motion for judgment of acquittal, which was denied. Timlick did not present any evidence, and the jury returned a guilty verdict on both counts. The district court[1] sentenced Timlick to prison for 240 months on the first count and 210 months on the second count to be served concurrently. Timlick now appeals, alleging there was insufficient evidence to support her convictions.[2]

---

[1]The Honorable Laurie Smith Camp, United States District Judge for the District of Nebraska.

[2]Timlick stated in the "summary and waiver of oral argument" section of her brief that she also appealed her sentence, but she did not address her sentence in the "statement of the issues," "summary of the argument," or anywhere else in her brief. Therefore, we conclude that Timlick has abandoned any challenge to her sentence. *See* Fed. R. App. P. 28(a)(9); *United States v. Pizano*, 421 F.3d 707, 721 (8th Cir. 2005), *cert. denied*, --- U.S. ---, 126 S. Ct. 1409 (2006).

## II.    DISCUSSION

Timlick's motion for judgment of acquittal at the close of the Government's evidence serves to preserve her argument for appeal. *United States v. May*, 476 F.3d 638, 640 (8th Cir. 2007). "We review the sufficiency of the evidence de novo, viewing evidence in the light most favorable to the government, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict." *Id*. at 640-41. "We may reverse only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt." *Id*. at 6401

To convict Timlick on a violation of 21 U.S.C. § 841(a)(1), the Government must prove that she knowingly possessed the methamphetamine and cocaine with the intent to distribute. *See United States v. McCracken*, 110 F.3d 535, 541 (8th Cir. 1997). "Proof of constructive possession is sufficient to satisfy the element of knowing possession." *United States v. Gonzales-Rodriguez*, 239 F.3d 948, 951 (8th Cir. 2001). To prove constructive possession, the Government must show that Timlick had "knowledge and ownership, dominion, or control over the contraband itself, or dominion over the vehicle in which the contraband is concealed." *United States v. Johnson*, 470 F.3d 1234, 1238 (8th Cir. 2006). "[P]ossession need not be exclusive, but may be joint." *United States v. Cawthorn*, 429 F.3d 793, 798 (8th Cir. 2005), *petition for cert. filed* --- U.S.L.W. ----, (May 25, 2006) (No. 05-11273).

The Government presented evidence that the keys to the SUV were in Timlick's possession and were recovered from her purse. We have joined "every other circuit to address this issue [and have held] that the holder of the key, be it to the dwelling, vehicle or motel room in question, has constructive possession of the contents therein." *United States v. Brett*, 872 F.2d 1365, 1369 n.3 (8th Cir. 1989) (collecting cases); *see also United States v. Gaona-Lopez*, 408 F.3d 500, 505-06 (8th Cir. 2005); *United States v. Walker*, 393 F.3d 842, 847 (8th Cir. 2005). Thus, from the fact that

Timlick had the keys to the SUV, a reasonable jury could have inferred that she had dominion or control over its contents. *See Brett*, 872 F.2d at 1369.

In addition, Timlick's rather unusual position in the SUV was further evidence of her dominion or control over the cocaine and methamphetamine. Trooper Jackson testified that even though the front passenger seat was vacant, Timlick was situated in the SUV's rear cargo area, where the contraband was ultimately discovered. From this position, the unlocked and unsecured compartment containing the contraband was readily accessible to Timlick, who was lying on top of it. Although mere physical proximity to contraband is insufficient to establish constructive possession, *United States v. Bradley*, 473 F.3d 866, 867 (8th Cir. 2007), we have previously held that a defendant's location in an unusual place where contraband is readily accessible may support a finding of constructive possession, *see United States v. Patterson*, 886 F.2d 217, 218, 219 (8th Cir. 1989) (per curiam) (holding as evidence of constructive possession the fact that the defendant was found "lying crouched on top of a rock and mortar wall" where "a plastic bag containing fifty-seven baggies filled with 87.8 per cent pure cocaine" was also found). Construed in the light most favorable to the Government and accepting all reasonable inferences, the evidence of Timlick's possession of the keys to the SUV and her unusual position inside the SUV was more than sufficient to support the jury's finding that Timlick had ownership, dominion or control over the contraband. *See Brett*, 872 F.2d at 1369; *Patterson*, 886 F.2d at 219; *see also United States v. Bowen*, 437 F.3d 1009, 1016 (10th Cir. 2006) ("considered with the rest of the evidence presented, [defendant's] close proximity to the drugs is probative").

The Government also presented sufficient evidence to establish that Timlick had knowledge that the contraband was in the SUV. For example, the jury heard evidence that during the canine sniff of the SUV and outside the presence of the troopers, Timlick said to Martinez, "I don't think he [Trooper Jackson] found it" and that "he [Trooper Jackson] thinks it's marijuana." From this, a reasonable jury could

have inferred that Timlick knew that "it" was contraband, knew that "it" was in the SUV and knew that "it" was something other than marijuana. Timlick's subsequent comment to Martinez that she did not "know where it was," is not evidence that she lacked the requisite knowledge for her conviction. Her claim of ignorance as to "its" location, even if true, does not establish that she was unaware that "it" existed somewhere in the SUV. Martinez's subsequent remark that "I told you it was the left side, left side twice, three or four times," is evidence that Timlick had indeed been aware of its existence in the SUV, if not its precise location. Timlick relies heavily on the fact that when Trooper Jackson informed her that he suspected criminal activity and that he had requested a canine unit, she responded, "what do you mean?" But when Timlick's recorded statements are examined on the whole, a reasonable jury could conclude that Timlick was referring to the cocaine and methamphetamine when she was talking about "it" and that she knew the contraband was hidden somewhere inside the SUV. *See Ortega v. United States*, 270 F.3d 540, 546-47 (8th Cir. 2001) ("based on entire [recorded] conversation, a jury could have reasonably inferred that she knew drugs had been hidden in the car").

In addition, the jury heard testimony that Timlick was nervous and flustered during the traffic stop, a fact that a reasonable jury could interpret as suggesting a consciousness of guilt. *See United States v. Barajas*, 474 F.3d 1023, 1026 (8th Cir. 2007). The jury also could have reasonably dismissed Timlick's proffered reason for the trip as implausible, since it would make little sense for Martinez to drive all the way from Idaho to pick up Timlick in Arizona for the purpose of retrieving a vehicle that is located in Iowa. *See Ortega*, 270 F.3d at 546 (noting that the jury may infer guilty knowledge from defendant's implausible statements to trooper). Likewise, the inconsistent statements made by Martinez and Timlick concerning the reason for their trip, the nature of their relationship, whether Timlick had ever lived in Iowa, how long Martinez had been in Arizona and with whom he had stayed while in Arizona, also support a reasonable inference that Timlick knew that the drugs were hidden in the

SUV. *See United States v. Martinez*, 238 F.3d 1043, 1048 (8th Cir. 1999) (noting that the jury may infer guilty knowledge from defendant's inconsistent stories).

Viewing this evidence in the light most favorable to the verdict, we conclude that the Government sufficiently established Timlick's constructive possession of the cocaine and methamphetamine found in the SUV by showing that Timlick had "knowledge and ownership, dominion, or control over the contraband itself, or dominion over the vehicle in which the contraband is concealed." *Johnson*, 470 F.2d at 1238. Thus, sufficient evidence supported the first element of 21 U.S.C. § 841(a) because "proof of constructive possession suffices to prove knowing possession." *Barajas*, 474 F.3d at 1026. The "intent to distribute" element of 21 U.S.C. § 841(a) was also supported by sufficient evidence because the manner in which the drugs were packaged, the quantity and purity of the drugs, as well as the cross-country trip from a border-town to the midwest are consistent with an intent to distribute. *See United States v. Mendoza-Gonzalez*, 363 F.3d 788, 796 (8th Cir. 2004); *Brett*, 872 F.2d 1370. Therefore, we hold that the evidence was sufficient for a reasonable jury to find beyond a reasonable doubt that Timlick knowingly possessed the contraband with intent to distribute it in violation of 21 U.S.C. § 841(a)(1). *See May*, 476 F.3d at 640-41.[3]

## III.  CONCLUSION

Accordingly, we affirm Timlick's convictions and sentence.

_____

---

[3]We also reject as meritless Timlick's argument that the fact that the jury submitted questions to the district court judge during its deliberations implies that the evidence was insufficient to support her convictions.