# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 08-3946

_____

United States of America,      *

     *

         Appellee,      *

     *        Appeal from the United States

     v.      *        District Court for the

     *        Western District of Missouri.

Dwight A. Thomas,      *

     *          [PUBLISHED]

         Appellant.      *


_____

Submitted: September 21, 2009
Filed: January 29, 2010

_____

Before MURPHY, HANSEN, and BYE, Circuit Judges.

_____

HANSEN, Circuit Judge.

Dwight A. Thomas appeals a judgment entered on a jury verdict finding him guilty of distributing crack cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), and possessing with intent to distribute 50 grams or more of crack cocaine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(iii), and § 851. Thomas challenges the district court's[1] decision to admit evidence surrounding a subsequent arrest, as well as the sufficiency of the evidence adduced at trial to convict him. We affirm.

_____

[1]The Honorable Greg Kays, United States District Judge for the Western District of Missouri.

# I.

On April 1, 2004, after conferring with a confidential informant, Kansas City Police Department Detective Luis Ortiz commenced an investigation of suspected crack cocaine trafficking near the 6100 block of Olive Street in Kansas City. On April 2, Detective Ortiz met with the confidential informant to observe the informant arrange to purchase crack cocaine from a suspected drug dealer. Detective Ortiz watched the informant dial phone number xxx-xxx-9980, and the detective listened as the informant arranged to purchase one hundred dollars' worth of crack cocaine.

Detective Ortiz then prepared the informant to purchase the drugs from the suspect. The detective equipped the informant with a transmitting device. Detective Ortiz searched the informant for drugs or weapons. Finding none, he provided the informant with five twenty dollar bills, which the detective had previously photocopied to record the serial numbers. The detective instructed the informant to purchase one hundred dollars' worth of crack cocaine—as arranged in the earlier telephone call—and to arrange a future purchase of two additional ounces of crack cocaine.

At approximately 12:20 p.m. that same day, Detective Ortiz drove the informant to the 6100 block of Olive Street. The detective watched the informant knock on the front door of the residence located at 6142 Olive Street. A man whom Detective Ortiz identified as the defendant, Dwight Thomas, answered the door and ushered the informant inside. The informant was inside for no more than five minutes. Detective Ortiz monitored the transmissions from the transmitting device during those five minutes. He listened to the informant arrange for the purchase of two additional ounces of crack cocaine, to occur later that day. During the course of that conversation, Detective Ortiz heard only two voices.

Detective Ortiz observed the informant exit 6142 Olive Street and walk directly to the detective's car. In the car, the informant gave Detective Ortiz approximately an eighth of an ounce of crack cocaine. The detective again searched the informant and found the informant no longer possessed the prerecorded "buy money." Soon thereafter, Thomas exited the house and drove off in a green 1995 Jeep that had been parked in front of 6142 Olive Street during the informant's drug purchase. The Jeep returned about three minutes later, and Thomas exited the Jeep and used keys to unlock and enter the front door of 6142 Olive Street.

After Thomas reentered the house, Detective Ortiz departed to obtain a warrant to search the Olive Street residence. After he obtained the search warrant, Detective Ortiz directed the informant to schedule the purchase of an additional two ounces of crack cocaine for that same day. The informant again dialed xxx-xxx-9980, and Detective Ortiz again monitored the phone call. As a result of that phone call, Detective Ortiz coordinated with a number of other police officers to execute the search warrant.

At about 3:45 p.m. the same day, officers secured the perimeter of 6142 Olive Street in preparation for executing the search warrant. Detective Ortiz observed Thomas standing on the front porch. Just as the officers were about to execute the warrant, a previously unknown individual arrived at 6142 Olive Street by car. When the individual was out of his car and contacting Thomas, police executed the search warrant. Both individuals were secured, and Thomas accurately identified himself to police. A search of Thomas's person yielded a cellular telephone and over one thousand dollars in cash, including the five photocopied twenty dollar bills given to the informant prior to the drug transaction earlier that day. The other individual possessed an amount of crack cocaine consistent with personal use.

Police officers searched 6142 Olive Street. No one was present inside the residence. Detective Ortiz entered the house and observed a scale with white residue

in the kitchen. Just inches away were baggies containing a white substance; the substance was later tested and determined to be 55.61 grams of crack cocaine. Also in the kitchen, police found two cell phone bills directed to the attention of Dwight Thomas and reflecting services provided to phone number xxx-xxx-9980. One of the bills was dated March 26, 2004. The keys found on Thomas's person operated the locks on the doors to 6142 Olive Street.

Officers also searched the green 1995 Jeep. They found another cell phone bill and Western Union receipts, both in Thomas's name and both listing the xxx-xxx-9980 phone number. Thomas admitted that xxx-xxx-9980 was his telephone number.

In addition to evidence gathered during the April 2004 investigation, the Government gave notice of its intent to introduce evidence of Thomas's involvement in subsequent drug trafficking. The district court held a pretrial hearing regarding this evidence, where Thomas challenged its admissibility under Federal Rule of Evidence 404(b). Over Thomas's objection, evidence tending to prove the following was admitted:

In early January 2008, a confidential informant contacted Kansas City Police Department Detective Don Stanze regarding suspected drug trafficking. The informant indicated a man driving a red SUV, known to the informant as "Ed," was dealing drugs at a residence located at 5216 Wabash Avenue, in Kansas City. When Detective Stanze commenced an investigation of the suspected drug trafficking at that address, he discovered the utilities were registered to Dwight Thomas. Detective Stanze had been involved in the 2004 investigation of Thomas and consequently recognized his name. On numerous occasions, Detective Stanze observed Thomas driving the red SUV to and from 5216 Wabash Avenue. On one occasion, Detective Stanze witnessed the red SUV depart from 5216 Wabash Avenue, and he attempted to follow it. When the detective lost sight of the vehicle, he requested that other

officers assist him to track the vehicle. A fellow officer located the red SUV at 4930 Wabash Avenue.

On February 19, 2008, Detective Stanze contacted the confidential informant to arrange a controlled buy of crack cocaine from the man known to the informant as Ed. In Detective Stanze's presence and using a speaker phone, the informant dialed xxx-xxx-1926 and arranged to purchase crack cocaine. During that conversation, the recipient of the call advised the informant that the recipient was at his "cook house." As a result of the conversation, Detective Stanze advised the informant he would follow him to 4930 Wabash Avenue in approximately one hour.

Detective Stanze met the informant at a covert location, searched the informant and his automobile, equipped him with a transmitting device, and provided him with $450 of prerecorded buy money. The detective and the informant then drove in separate automobiles to 4930 Wabash Avenue. Detective Stanze watched as the informant entered the house, and he listened as the transaction was completed. The red SUV was parked at 4930 Wabash Avenue at that time. After the transaction, Detective Stanze maintained visual contact with the informant until the two again met at the agreed upon covert location. When they met, the informant provided Detective Stanze with 14.1 grams of crack cocaine. At the conclusion of the meeting, Detective Stanze concluded Thomas was selling and storing drugs at 4930 Wabash Avenue. Consequently, Detective Stanze obtained search warrants for two residences: 4930 Wabash Avenue and 5216 Wabash Avenue.

Detective Stanze employed the confidential informant to arrange a second controlled purchase of drugs, to coincide with the execution of the search warrants. Again, on February 20, Detective Stanze watched as the informant dialed xxx-xxx-1926 and listened on the speakerphone as the informant arranged to purchase 7 grams of crack cocaine for $225. Later the same day, the detective again met with the informant, searched him, equipped him with a transmitting device, and provided him

with prerecorded "buy money." He watched as the informant entered the house at 4930 Wabash Avenue, and he listened to a drug transaction via the hidden transmitting device. Detective Stanze recognized the informant's voice as well as the same voice from the previous phone calls and previous transaction. After the informant exited 4930 Wabash Avenue, Detective Stanze followed him to a covert location. There, the informant gave Detective Stanze crack cocaine.

After debriefing the informant, Detective Stanze returned to 4930 Wabash Avenue, where a police tactical unit was executing the search warrant. Police detained five people in the residence, including Thomas. Detective Stanze recognized Thomas's voice from monitoring the informant's phone calls and drug transactions. At that time, Thomas possessed $4298, including the $225 in prerecorded buy money. Police also found multiple bags of crack cocaine on the kitchen counter, digital scales of the type used to weigh drugs, and two cell phones. There was a trail of crack cocaine on the floor between the kitchen and the location where police had detained Thomas. Thomas acknowledged ownership of one of the cell phones found in the kitchen near the drugs. Detective Stanze dialed the number used to arrange the two controlled buys—xxx-xxx-1926—and Thomas's phone rang. Police also found 14 grams of crack cocaine hidden in the basement along with a digital scale. Upon searching 5216 Wabash Avenue, police found a digital scale and a gas bill directed to Thomas.

Thomas moved for a judgment of acquittal at the close of the Government's case and also at the close of all evidence. The district court denied both motions and submitted the two count indictment to the jury. The jury returned a verdict of guilty on both counts. Thomas appeals, arguing (1) evidence of the 2008 investigation and arrest was introduced in violation of Federal Rule of Evidence 404(b); and (2) there was insufficient evidence to support the jury's verdict.

II.

The district court enjoys broad discretion to admit evidence of other crimes. United States v. Thomas, 398 F.3d 1058, 1062 (8th Cir. 2005). We review a district court's decision to admit evidence under Federal Rule of Evidence 404(b) for abuse of discretion and "'reverse only when such evidence clearly had no bearing on the case and was introduced solely to prove the defendant's propensity to commit criminal acts.'" Id. (quoting United States v. Howard, 235 F.3d 366, 372 (8th Cir. 2000)).

While outlawing admission of evidence of other crimes that is proffered "to prove the character of a person in order to show action in conformity therewith," Federal Rule of Evidence 404(b) allows such evidence "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." It is well-settled in this circuit that the rule is one of inclusion, "such that evidence offered for permissible purposes is presumed admissible absent a contrary determination." United States v. Johnson, 439 F.3d 947, 952 (8th Cir. 2006). Evidence of other crimes is admissible under Rule 404(b) if it is "(1) relevant to a material issue; (2) similar in kind and close in time to the crime charged; (3) proven by a preponderance of the evidence; and (4) if the potential prejudice does not substantially outweigh its probative value." Thomas, 398 F.3d at 1062.

Thomas argues that the evidence of the 2008 crack cocaine trafficking fails three of the four requirements. He argues that the evidence is not relevant to a material issue raised at trial, is not similar in kind and close in time to the crime charged, and that the probative value of the evidence is substantially outweighed by its prejudicial value.

Thomas pled not guilty and generally denied participation in the charged crimes, requiring the Government to shoulder the burden of introducing proof beyond

a reasonable doubt of every element of each offense charged. United States v. Johnson, 934 F.2d 936, 939-40 (8th Cir. 1991). Nonetheless, Thomas relies on United States v. Jenkins, 7 F.3d 803, 806-07 (8th Cir. 1993), and he argues that evidence of the 2008 investigation is not relevant because "intent is not an issue when the defense at trial is a complete denial that the defendant participated in the drug transactions charged." (Appellant's Br. at 11.) We have previously rejected the (effectively identical) argument that, while intent may be *an* issue in a given case, intent is not *in* issue when a defendant completely denies participation in the crime. See Johnson, 439 F.3d at 952 (noting "the Supreme Court's decision in Old Chief v. United States, 519 U.S. 172 (1997), effectively overruled Jenkins").

Intent was an element of each of the offenses charged in this case. See Johnson, 934 F.2d at 939 n. 5 (elements of distribution offense); United States v. Timlick, 481 F.3d 1080, 1082 (8th Cir. 2007) (elements of possession offense). This is not the first time we have held knowledge and intent are material issues in cases involving distribution of narcotics in violation of 21 U.S.C. § 841(a)(1). See Johnson, 934 F.2d at 939. Evidence of other acts is generally admissible to establish those elements. Id. Additionally, "'the mere subsequency of an act to that charged in an indictment does not on that ground alone make it incompetent to establish intent or motive.'" Id. at 940 (quoting McConkey v. United States, 444 F.2d 788, 790 (8th Cir.) (per curiam), cert. denied, 404 U.S. 885 (1971)). We reject Thomas's argument that evidence of the 2008 investigation was irrelevant.

Thomas also argues that evidence from the 2008 investigation is not sufficiently close in time to be admissible under Rule 404(b). "There is no absolute rule regarding the number of years that can separate offenses" admitted under Rule 404(b). United States v. Edelman, 458 F.3d 791, 810 (8th Cir. 2006). This is because "[a]lthough proximity in time combined with similarity in type of crime virtually guarantees admittance of prior bad acts evidence, these are only factors" useful for evaluating "[t]he ultimate question . . . whether the evidence is admissible to prove any relevant

issue other than the character of the defendant or his propensity toward criminal activity." United States v. Drew, 894 F.2d 965, 970 (8th Cir.) (citations and quotations omitted), cert. denied, 494 U.S. 1089 (1990). Where the extrinsic act is extremely similar to the crime at issue, evidence of the act will usually be rendered irrelevant only by "an enormous lapse of time." United States v. Anifowoshe, 307 F.3d 643, 647 (7th Cir. 2002); cf. Drew, 894 F.2d at 970 ("In the case of signature crimes, or other crimes by the accused so nearly identical in method as to earmark them as the handiwork of the accused, the time factor is obviously much less important than in the typical 404(b) case." (citation and quotations omitted)).

The similarity of the other acts evidence introduced in this case is unquestioned. In fact, Thomas stresses the similarity of the evidence in attempting to show he was prejudiced by its introduction. The 2004 and 2008 investigations occurred in the same general geographic area. In each instance, police observed the confidential informant dial Thomas's telephone number and arrange a drug transaction; police accompanied or followed the informant to a residence controlled by Thomas, where his automobile was parked. Subsequent to the drug transaction in each case, police performed searches of Thomas and the residence. Both times, Thomas was found with large quantities of cash, including prerecorded buy money, and the residence housed crack cocaine, paraphernalia often associated with drug distribution, and personal documents implicating Thomas.

We have approved the admission of evidence of similar crimes that occurred a decade before the charged crime. See, e.g., United States v. Ironi, 525 F.3d 683, 688 (8th Cir. 2008) (allowing evidence of possession of cocaine occurring eight and ten years before the aiding and abetting possession with intent to distribute cocaine charge at issue). The terms of Rule 404(b) draw no distinction between prior and subsequent acts that would support different analyses, Anifowoshe, 307 F.3d at 646-47, nor have we applied different analyses to evaluate the admission of prior and subsequent acts, see, e.g., United States v. DeAngelo, 13 F.3d 1228, 1231 (8th Cir.) (applying well-

established four-factor test to determine admissibility of subsequent act evidence), cert. denied, 512 U.S. 1224 (1994). Considering the similarities between the crimes charged and the subsequent-acts evidence, we cannot say the mere passage of four years' time renders the evidence irrelevant to show knowledge or intent.

Finally, Thomas argues the probative value of the subsequent-acts evidence is substantially outweighed by the danger of unfair prejudice. Again, we have held evidence of similar drug activity to be probative of intent in proving a previous violation of 21 U.S.C. § 841(a)(1). Johnson, 934 F.2d at 940. And again, the subsequent-acts evidence is undeniably similar, and Thomas acknowledges the similarity. Additionally, the district court instructed the jury that evidence of the 2008 investigation could be used only to establish Thomas's intent, knowledge, or lack of mistake. Such limiting instructions minimize the danger of unfair prejudice. United States v. Hessman, 493 F.3d 977, 983 (8th Cir. 2007), cert. denied 128 S. Ct. 1100 (2008). Given the relevance of the evidence—as bolstered by significant similarities—and the limiting instruction, we cannot say the evidence "'clearly had no bearing on the case and was introduced solely to prove the defendant's propensity to commit criminal acts.'" See Thomas, 398 F.3d at 1062 (quoting Howard, 235 F.3d at 372). Consequently, the district court did not abuse its discretion.

III.

Thomas also contends there was insufficient evidence to convict him of either count of the indictment. We review *de novo* the denial of a motion for judgment of acquittal, and "[w]e may reverse only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt." Timlick, 481 F.3d at 1082.

Thomas argues the evidence at trial did not foreclose the possibility that another person was inside the 6142 Olive Street residence on April 2, 2004, when the confidential informant used the prerecorded buy money to purchase crack cocaine.

As to the second count—possession with intent to distribute 50 grams or more of crack cocaine—Thomas's argument does nothing to address binding circuit precedent that dictates an affirmance of the jury's verdict. Count two required proof beyond a reasonable doubt that Thomas (1) knowingly possessed 50 grams or more of crack cocaine, and (2) intended to distribute the crack cocaine. 21 U.S.C. § 841(a)(1) and (b)(1)(A)(iii); Timlick, 481 F.3d at 1082. The element of knowing possession may be satisfied with proof of constructive possession. Timlick, 481 F.3d at 1082. "We have joined 'every other circuit to address this issue [and have held] that the holder of the key, be it to the dwelling, vehicle or motel room in question, has constructive possession of the contents therein.'" Id. at 1083 (quoting United States v. Brett, 872 F.2d 1365, 1369 n.3 (8th Cir.) (collecting cases) (alteration in original), cert. denied, 493 U.S. 932 (1989)). Additionally, the Government need not show exclusive possession; joint possession suffices. Id. Thomas possessed keys that operated the front door locks to 6142 Olive Street. That evidence alone supports an inference of Thomas's constructive possession of the contents of the house, including over 50 grams of crack cocaine. The record similarly contained sufficient evidence of an intent to distribute. Police seized 55.61 grams of cocaine in the April 2 search. Expert testimony established that 55.61 grams of crack cocaine is consistent with distribution, not personal use. See United States v. Bell, 477 F.3d 607, 613 (8th Cir. 2007) (considering expert testimony that seven grams of crack cocaine evidenced intent to distribute). "A large quantity of drugs, standing alone, is sufficient evidence of . . . intent to distribute." United States v. Serrano-Lopez, 366 F.3d 628, 635 (8th Cir. 2004). Police also discovered a digital scale with white residue in the house and over $1000 cash on Thomas's person. See United States v. Schubel, 912 F.2d 952, 956 (8th Cir. 1990) ("The presence of equipment to weigh and measure narcotics . . . and large sums of cash are common indicia of drug trafficking and are . . . circumstantial evidence of intent to distribute."). The evidence was sufficient to support a guilty verdict on count two.

Thomas's argument that insufficient evidence exists to support the guilty verdict on the first count suffers from similar infirmities. He argues a third person could have been present at 6142 Olive Street when the informant visited to purchase drugs. His argument must be rejected "because the jury's verdict must be upheld if *any* rational interpretation of the evidence, regardless of countervailing evidence, would allow a reasonable-minded jury to conclude guilt beyond a reasonable doubt." United States v. Jimenez-Serrato, 336 F.3d 713, 715 (8th Cir. 2003). If the evidence adduced at trial rationally supports conflicting hypotheses, we refuse to disturb the conviction. Id. When this court reviews the sufficiency of the evidence to support a jury verdict, it treats circumstantial evidence no differently than direct evidence. United States v. Lam, 338 F.3d 868, 871 (8th Cir. 2003).

The Government proffered significant circumstantial evidence in this case. Detective Ortiz watched the informant dial Thomas's phone number and listened to what he believed was the scheduling of a drug transaction. Thomas greeted the informant at the door of the house where the informant bought crack cocaine. The detective heard only two voices during the transaction. Shortly thereafter, Thomas left the house driving a 1995 Jeep and returned, using keys to operate the front door. A few hours later—after the informant dialed Thomas's phone number and scheduled a second transaction—police searched the same house and discovered distribution quantities of crack cocaine near other incidents of drug distribution. At the same time, Thomas was found with keys to the house, keys to the 1995 Jeep, and a large quantity of cash—including all five prerecorded twenty dollar bills. More crack cocaine was discovered in the Jeep, along with documents bearing Thomas's name and phone number. Finally, there was evidence Thomas was arrested on a subsequent occasion under circumstances evidencing an intent to distribute crack cocaine. Even if the evidence allowed another rational explanation, our review is strictly circumscribed by a necessary respect for the jury's verdict. One rational interpretation of the evidence is that the informant called Thomas's phone; Thomas personally answered his phone and scheduled a drug buy; Thomas welcomed the informant into the house and sold

him crack cocaine in exchange for the prerecorded buy money later found on Thomas's person. Because the evidence rationally supports an inference that Thomas sold crack cocaine to the confidential informant in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), we will not and cannot disturb the jury's verdict. <u>See</u> <u>Jimenez-Serrato</u>, 336 F.3d at 715.

IV.

Accordingly, the judgment of the district court is affirmed.

_____