# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 10-1283

———————

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of South Dakota. |
| Allen C. Shillingstad, | * | |
| | * | |
| Appellant. | * | |

———————

Submitted: October 19, 2010
Filed: February 22, 2011

———————

Before SMITH, COLLOTON, and SHEPHERD, Circuit Judges.

———————

COLLOTON, Circuit Judge.

A jury convicted Allen C. Shillingstad of assault with a dangerous weapon, in violation of 18 U.S.C. §§ 1153 and 113(a)(3), and assault resulting in serious bodily injury, in violation of 18 U.S.C. §§ 1153 and 113(a)(6). At sentencing, the district court[1] departed upward from the advisory guidelines and sentenced Shillingstad to 80 months' imprisonment. Shillingstad appeals his conviction, arguing that the district court abused its discretion by admitting evidence of his prior tribal

———————

[1]The Honorable Charles B. Kornmann, United States District Judge for the District of South Dakota.

convictions under Federal Rule of Evidence 404(b) and by excluding evidence of a prior inconsistent statement made by the victim. Shillingstad also challenges his sentence. We affirm.

I.

We recite the evidence in the light most favorable to the verdict. Shillingstad lived with his girlfriend, Theresa White Bull, at the home of his mother, Charmayne Eagleman, in Wakpala, South Dakota. Wakpala is located within the Standing Rock Indian Reservation. During the late-evening hours of December 14, 2008, Shillingstad and White Bull, who had been drinking alcohol, were in their bedroom in Eagleman's basement.

At some point, the two began to argue, and Shillingstad hit White Bull on the head with a plate. Shillingstad then retrieved a two-by-four board and displayed it in a threatening manner as he stood above White Bull, who was seated in a chair. He then struck White Bull on the forearm with the board as she was raising her arm in defense. While White Bull remained seated, Shillingstad struck her leg with the board. White Bull then attempted to go upstairs, but Shillingstad came from behind and pushed her down.

At this point, two National Park Service rangers, who had responded after Eagleman had called 911, entered the basement. Shillingstad and White Bull told the rangers that White Bull sustained her injuries by falling down the stairs. After one ranger removed Shillingstad from the room, White Bull recanted her previous statement and explained to the second ranger that Shillingstad had struck her with the board.

Paramedics then transported White Bull to the hospital by ambulance. White Bull received stitches to her head, and was later transported to a hospital in Bismarck,

North Dakota, where she underwent knee surgery. One of her treating physicians in Bismarck, Dr. Phillip Gattey, determined that she had suffered a subdural hematoma and a tibial tuberosity fracture. At trial, Gattey testified that such a fracture would not have resulted from a fall alone, and would have required some measure of direct force.

Shillingstad was charged with assault with a dangerous weapon, in violation of 18 U.S.C. §§ 1153 and 113(a)(3), and assault resulting in serious bodily injury, in violation of 18 U.S.C. §§ 1153 and 113(a)(6). After a trial, a jury returned a verdict of guilty as to both counts, and Shillingstad disputes on appeal several of the district court's evidentiary rulings. At sentencing, the court departed upward from the advisory guideline range, pursuant to USSG § 4A1.3(a)(1), finding that Shillingstad's criminal history category underrepresented the likelihood that he would commit future crimes. The resulting sentencing range was 70 to 87 months. The court imposed a sentence of 80 months' imprisonment and three years of supervised release on each count, to be served concurrently. Shillingstad appeals the conviction and sentence.

## II.

Shillingstad contends that three of the district court's evidentiary rulings constitute reversible error. We review the court's rulings for abuse of discretion. *United States v. Davidson*, 449 F.3d 849, 853 (8th Cir. 2006).

## A.

We first address Shillingstad's argument that the district court erred in admitting evidence of his prior tribal convictions for assaulting White Bull pursuant to Rule 404(b). Prior to trial, the government argued that the evidence was probative of Shillingstad's intent and the absence of an accident. The district court ruled that

the evidence was admissible because it was permitted by Rule 404(b) and not excluded by Rule 403. The government inquired about the convictions during its examinations of White Bull, Eagleman, and Shillingstad.

Rule 404(b) prohibits the admission of evidence of other crimes for use as character or propensity evidence, but it permits such evidence for other purposes, such as proof of intent or absence of mistake or accident. A prior offense is admissible under the rule if it is "(1) relevant to a material issue; (2) similar in kind and close in time to the crime charged; (3) proven by a preponderance of the evidence; and (4) [such that] the potential prejudice does not substantially outweigh its probative value." *United States v. Thomas*, 593 F.3d 752, 757 (8th Cir. 2010) (internal quotations omitted).

The district court did not abuse its discretion in admitting evidence of Shillingstad's prior tribal convictions for assaulting White Bull. The offenses were relevant to the element of Shillingstad's intent and whether White Bull's injuries resulted from an accident, matters that the defense put in issue when Shillingstad testified that White Bull sustained injuries when she accidentally hit her head on a plate and fell on a concrete floor after losing her balance. *See United States v. Littlewind*, 595 F.3d 876, 881 (8th Cir. 2010). They involved conduct that was nearly identical to the charged offenses, as the two prior offenses involved Shillingstad's throwing dishes at White Bull and striking her on the arm with an old table leg. The offenses were sufficiently close in time, having occurred in 2005 and 2006 and thus within four years of the charged conduct. *See, e.g.*, *Thomas*, 593 F.3d at 758-59; *United States v. Walker*, 428 F.3d 1165, 1170-71 (8th Cir. 2005).

The danger of unfair prejudice did not substantially outweigh the probative value of the prior tribal offenses. Shillingstad argues that even if the fact of conviction was admissible, the court should have excluded the circumstances of the offenses in order to reduce the potential for unfair prejudice. *See Walker*, 428 F.3d

at 1170.  In this case, however, the close similarity of the prior incidents made the evidence especially probative on the question of Shillingstad's intent and the absence of accident, and it was reasonable for the court to permit that evidence.  *See Littlewind*, 595 F.3d at 881.  The court gave proper limiting instructions, *see Thomas* 593 F.3d at 759, and we are satisfied that the court did not abuse its discretion in admitting the evidence.

B.

Shillingstad next contends that the district court erred by allowing the government to inquire about his previous tribal convictions for abusive acts against his mother, Charmayne Eagleman, who appeared as a defense witness.  Shillingstad maintains that although the district court correctly excluded the evidence at a pretrial conference, it committed reversible error when it concluded that Eagleman's testimony on cross-examination opened the door to questions about Shillingstad's prior convictions.

Shillingstad contends that because his direct examination of Eagleman focused on her observations during the night in question, the government's cross-examination should have been limited to that subject matter, *see* Fed. R. Evid. 611(b), and proper cross-examination could not have "opened the door" to questions about his character and prior tribal offenses.  In his view, it was error for the court to rule that the door was opened to otherwise inadmissible testimony on cross-examination when Shillingstad's *direct* examination did not elicit evidence requiring an opportunity to explain or contradict.  *See United States v. Durham*, 868 F.2d 1010, 1012 (8th Cir. 1989).  He contends that the government cannot open the door for itself through questions of its own witness, because "[t]he doctrine of opening the door . . . is limited to testimony that might explain or contradict the testimony offered by the opposing party on direct examination."  *Id*. (internal quotations omitted).

The government responds that it was Eagleman's unsolicited responses on cross-examination, not the government's questions, that opened the door and permitted an inquiry into the prior tribal offenses. When Eagleman, in response to factual questions about what happened on the night of incident, volunteered historical assertions casting blame on White Bull – i.e., that White Bull was "always accusing somebody, or something" and "[g]iving [Shillingstad] reason to get into an argument," and that Eagleman usually called police when the two argued because she did not "want all of that stuff that [White Bull] brings around" – the court permitted the government to inquire whether Eagleman herself had made statements about "being scared of [her] son." After Eagleman then volunteered in response to this yes-or-no question that Shillingstad "has never assaulted me or – he has said things to me verbally, is all, but he has never attempted to assault me or anything," the court allowed the government to rebut this testimony with evidence of Shillingstad's prior convictions for abusive acts against Eagleman.

The government contends that because Eagleman was a hostile witness who volunteered nonresponsive testimony in an effort to help Shillingstad, it was proper for the court to allow the government to impeach the testimony. Shillingstad, moreover, did not seek to keep the door firmly closed to the prior convictions by moving to strike Eagleman's volunteered testimony, although it is not clear whether he properly could have done so. *See* Myron H. Bright et al., *Objections at Trial* 255 (5th ed. 2008) (stating that "[u]nder the traditional view, only the party who is conducting the examination can move to strike for unresponsiveness alone," but recognizing "a minority view" embodied in a California statute that permits both parties to move to strike nonresponsive testimony); 1 Kenneth S. Broun, *McCormick on Evidence* § 52, at 254 nn.6-7 (6th ed. 2006) ("The mere fact that the answer is unresponsive is not an objection available to the opponent. The objection is available to only the questioner, who may move to strike. . . . However, many trial judges permit both parties to move to strike on the ground of nonresponsiveness[.]") (citations omitted); Michael H. Graham, *Federal Rules of Evidence in a Nutshell*

§ 611.23, at 283-84 (6th ed. 2003) ("The motion is available only to the questioner, unresponsiveness not being a matter of concern to the opposite party if the answer is otherwise admissible. . . . However in order to prevent a witness from continuing to give an unresponsive answer, opposing counsel may object on the ground that there is no question pending before the witness, or that the answer is being volunteered."); Roger C. Park, *Trial Objections Handbook* § 6.16, at 6-21 (2d ed. 2001) ("It seems . . . that the witness who continually gives nonresponsive answers is in danger of straying into inadmissible matters, and that the trial judge should keep the witness in bounds by responding to a complaint from either side.").

We conclude that any error in permitting the government to question Eagleman about Shillingstad's prior offenses against her was harmless, because it did not have a substantial influence on the verdict. *See United States v. Henderson*, 613 F.3d 1177, 1183 (8th Cir. 2010). The government presented a strong case that included White Bull's detailed testimony that Shillingstad hit her on the head with a plate and then hit her twice with a board, the corroborating testimony of Ranger Patrick Miller, who discovered a shattered plate, a two-by-four board, and blood in various locations in the basement on the night of the incident, and the medical opinion of Dr. Gattey that White Bull's leg injury was caused by the application of direct force to the bone. On the question of intent, the jury also knew of Shillingstad's prior convictions for assaulting White Bull, which were more probative than the prior convictions involving Eagleman. In light of this evidence, we conclude that any error was harmless.

C.

We next address Shillingstad's contention that the district court erred by refusing to admit the testimony of paramedic Holly Bickel to impeach White Bull pursuant to Rule 613(b). According to Bickel's written report, White Bull stated that "she fell down the stairs and hit her head." When Shillingstad asked White Bull on

-7-

cross-examination whether she "remember[ed] telling [the paramedics] that [she] fell down the steps and twisted [her] knee and hit [her] head," White Bull responded that she was "not sure." The government moved to exclude Bickel's testimony on the ground that White Bull never denied making the statement, but said only that she could not recall whether she did. The district court stated flatly that Bickel's testimony "is not admissible, and I'm not going to admit it," and we construe this as a definitive ruling excluding the evidence. *See* Fed. R. Evid. 103(a).

Rule 613(b) permits the admission of "[e]xtrinsic evidence of a prior inconsistent statement by a witness." In determining whether a claim of faulty memory is inconsistent with statements previously given, the trial judge "must be accorded reasonable discretion." *United States v. Rogers*, 549 F.2d 490, 496 (8th Cir. 1976). Where a witness in good faith asserts that she cannot remember the relevant events, the trial court may, in its discretion, exclude the allegedly prior inconsistent statement. *Id*. Here, the district court reasonably determined that White Bull's claimed inability to recall her statement to the paramedic was genuine, given the evidence that White Bull had consumed alcohol on the night in question and suffered significant trauma to her head and leg. We therefore see no abuse of discretion in the court's refusal to admit the paramedic's testimony as a prior inconsistent statement of White Bull.

We note, moreover, that Bickel's testimony would have been largely cumulative. Ranger Miller testified that White Bull first stated she was injured in a fall before changing her story. Eagleman testified that White Bull said she had fallen, and White Bull herself admitted that she initially told the rangers either that she could not remember what happened or that she fell down, twisted her knee, and hit her head. Any error in excluding the evidence from Bickel was therefore harmless as well. *See United States v. Bordeaux*, 570 F.3d 1041, 1052 (8th Cir. 2009).

III.

Shillingstad also challenges his sentence. He argues that the district court committed procedural error in calculating the advisory guideline range when it departed upward from criminal history category I to category III. We review the court's decision to depart upward for abuse of discretion. *United States v. Cook*, 615 F.3d 891, 892 (8th Cir. 2010).

Pursuant to USSG § 4A1.3(a)(1), a district court may increase a defendant's criminal history category when "reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." In making this determination, the court may consider prior sentences "not used in computing the criminal history category (*e.g.*, sentences for foreign and tribal offenses)." USSG § 4A1.3(a)(2)(A); *see also Cook*, 615 F.3d at 893. The court is also free to "weigh the similarity of past offenses to the instant offense, and the possibility that repeated offenses of a similar nature indicate a heightened need for deterrence." *United States v. Mentzos*, 462 F.3d 830, 841 (8th Cir. 2006).

The court departed upward here because it determined that Shillingstad's criminal history category "underrepresents the likelihood that he will commit further crimes of violence and substantially underrepresents his past actual criminal history." Unlike the situation in *United States v. Azure*, 536 F.3d 922, 932 (8th Cir. 2008), where we held that a district court failed adequately to explain a departure from category I to category VI, the court in this case departed upward by only two criminal history categories and sufficiently explained that its decision was based on Shillingstad's extensive criminal record. This record included multiple convictions for violent behavior, including two offenses directed at the same victim and consistent with the offense conduct in this case. The court further explained that six of Shillingstad's seven convictions between 1981 and 1993 were not counted in his

criminal history score because they occurred prior to the applicable time period, *see* USSG § 4A1.2(e)(3), and that Shillingstad's numerous tribal convictions also were not counted. *See* USSG § 4A1.2(i). Based on this record, the district court did not abuse its discretion in departing upward, and there was no procedural error at sentencing.

\* \* \*

For the foregoing reasons, the judgment of the district court is affirmed.

_____